UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LENA JOHNSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | Civil Action No. 11-494 (JMF) |

**MEMORANDUM OPINION**

This case was referred for all purposes. Currently pending and ready for resolution is Plaintiffs' Motion for Summary Judgment [#14]. For the reasons stated below, plaintiffs' motion will be granted in part and denied in part.

**INTRODUCTION**

Plaintiffs in this case are 1) Lena Johnson, the parent of E.J., and 2) Brenda Smith, the parent of B.S. [#14-1] at 2. Both children were previously diagnosed with disabilities and awarded special education services pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400, *et seq.*[1] ("IDEA"), which guarantees all children enrolled in the District of Columbia Public Schools ("DCPS") system a free and appropriate education ("FAPE"). Id. Administrative proceedings were brought on behalf of both children and both prevailed. Id. They then sought and were awarded attorney's fees by another judge of this Court, Gladys Kessler, in

---

[1] All references to the United States Code or the District of Columbia Code are to the electronic versions that appear in Westlaw or Lexis.

the case of <u>Cox v. District of Columbia</u>, No. 09-1720 (GK). <u>Id.</u>

Plaintiffs now seek reimbursement of attorney's fees incurred after the filing of the <u>Cox</u> case and, to that end, have moved for summary judgment. [#14-1] at 2. The amount in controversy, however, is not great. In the E.J. case, the defendant has paid all but $1,333.38 and in the B.S. case, only $827.34 is sought, for a total of $2,160.73. <u>Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment</u> [#15] at 13.

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The defendant does not claim that there are any genuine issues of material fact but raises two issues of law: 1) that the rates sought for the services rendered are too high, and 2) that Elizabeth Jester, counsel for the plaintiffs, is attempting to recover, at hourly rates for legal services, reimbursement for clerical tasks that should be absorbed as overhead.

Specifically, the DCPS balks at paying plaintiffs' counsel's present hourly rate of $450 an hour for her time after January 1, 2010 through to the present. <u>See</u> [#14-1] at 8. Rather, it has indicated generally that it will pay lawyers at the rate of $300 per hour in IDEA cases. <u>Defendant's Statement of Material Facts as to Which There is No Genuine Issue</u> [#15-3] ¶ 1. The defendant also refuses to pay anything at all for the following tasks: 1) reviewing a file to prepare for an IEP meeting in one of the cases, 2) preparing a fee petition in both cases, and 3) reviewing the fee petition in both cases. <u>See</u> [#15-5] at 2; <u>Defendant's Praecipe Clarifying its Contentions that Plaintiffs are Not Due Reimbursement for Certain Work Performed</u> [#19] at 2. Additionally, the defendant refuses to pay Jester for writing a "case close letter" to her client in

the B.S. case. See [#15-5] at 2.

## DISCUSSION

I.   Legal Standard

Pursuant to the IDEA, the Court "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). The statute further provides that "[f]ees . . . shall be based on rates prevailing in the community in which the action or proceedings arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The movant must therefore demonstrate 1) that he is the prevailing party, and 2) that the attorneys' fees sought are reasonable.

In order to qualify as a prevailing party, there must be an "alteration in the legal relationship of the parties" and this alteration must be the result of formal judicial action. Lopez v. District of Columbia, 383 F. Supp. 2d 18, 21 (D.D.C. 2005) (quoting Buckhannon Bd. and Care Home, Inc., v. West Virginia Dep't of Health and Human Res., 532 U.S. 598, 605-06 (2001)).

Determining the reasonable rate is not as straight forward. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" in order to arrive at the total or "lodestar" amount. Hensely v. Eckerhart, 461 U.S. 424, 433 (1983). "[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

II.    Analysis

    A.    Plaintiffs were Prevailing Parties

Defendant does not contest plaintiffs' status as prevailing parties in this matter. See generally [#15]. Thus, the only issue before the Court is whether the fees plaintiffs seek on behalf of their counsel are reasonable.

    B.    Plaintiffs' Counsel's Fees are Reasonable

        1.    Jester's Billing Practices

In the matter currently before the Court, Jester charged hourly rates that are below Laffey rates.[2] [#14] at 8. Furthermore, in Jester's declaration, she states that it has been her practice to charge either current or below market rates for her services and that Judges Friedman, Lamberth, Bryant, Sullivan, and Kessler have found those rates to be reasonable in other IDEA cases. [#14-4] at 4-5.

        2.    Jester's Skill, Experience, and Reputation

Jester's skill and experience in the area of special education is well documented. She received her law degree in 1980 from Catholic University School of Law. [#14-4] at 1. She has specialized in children's rights issues since entering private practice in 1997 and has spoken at numerous conferences and seminars on a variety of issues relating to children. Id. at 3. She has also taught CLE courses relating to special education issues. Id. Additionally, she has represented numerous clients in the field of special education both at the administrative as well

---

[2] In 2008 and 2009, the Laffey matrix indicates that attorneys with twenty or more years of experience are to be awarded $465 per hour. Laffey Matrix 2003-2012. The United States Attorney's Office, http:/www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Mar. 16, 2012). From 2010 to 2011, that rate rises to $475 per hour. Id. For paralegals, the rate in 2008 and 2009 is $130 per hour while in 2012, that rate increases to $135 per hour. Id.

as local and federal court levels. Id.

Finally, Jester serves on a panel of attorneys approved by the D.C. Superior Court Family Division to accept special education attorney appointments. [#14-4] at 2. She also teaches new special education attorneys at a training program sponsored by the D.C. Public Defender Services. See generally [#14-4].

### 3. Prevailing Market Rates

Although, as defendant notes, use of the Laffey matrix to determine reasonable hourly rates in IDEA cases is not automatic, numerous Judges in this Court have relied on it as an appropriate starting point for determining rates of reimbursement for attorneys who challenge the decisions of the DCPS. Thus, at least where the issues are complex, the full Laffey rate has been awarded by some members of this Court.[3] See A.S. v. District of Columbia, ___ F. Supp. 2d ___, 2012 WL 291349, at *7 (D.D.C. 2012) (awarding Laffey rates upon finding that the hearing lasted four days, there were 105 proposed exhibits, there were ten witnesses, and the hearing officer's determination was 28 pages long); Bucher v. District of Columbia, 777 F. Supp. 2d 69, 74 (D.D.C. 2011) (awarding Laffey rates upon finding that the hearing lasted four days, there were 42 proposed exhibits, and there were twenty one proposed witnesses); Jackson v. District of Columbia, 696 F. Supp. 2d 97, 102 (D.D.C. 2010) (noting that an IDEA administrative proceeding that requires expert testimony is sufficiently complex to warrant application of Laffey matrix).

Where the issues are not complex, in that there are "no pre-hearing interrogatories or discovery, no production of documents or depositions, no briefings of intricate statutory or

---

[3] This is not to suggest that fees aren't discounted on other grounds.

constitutional issues, no pre-trial briefings, no lengthy hearings, no protracted arguments, and few, if any, motions filed,"[4] some judges have concluded that use of the Laffey matrix is not appropriate, and instead, have awarded some fraction of the Laffey rate.  See Wright v. District of Columbia, No. 11-CIV-0384, 2012 WL 79015, at *4 (D.D.C. Jan. 11, 2012) (awarding three-quarters of the Laffey rate because there was no evidence that the administrative hearing presented a novel legal issue or was in any way more complex than most hearings); Cousins v. District of Columbia, No. 11-CIV-384, 2012 WL 79015, at *5 (D.D.C. Jan. 11, 2012) (awarding three-quarters of Laffey rate because case involved a routine administrative proceeding and the time spent preparing for hearing was nominal); Rooths v. District of Columbia, 802 F. Supp. 2d 56, 63 (D.D.C. 2011) ("Like most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little evidence, and no novel or complicated questions of law . . . . The Court therefore will award fees at an hourly rate equal to three-quarters of the USAO Laffey rate . . . .").

In Cox v. District of Columbia, the case from which this one stems, Judge Kessler unequivocally held that the proceedings for E.J. and B.S. were both sufficiently lengthy and complex to warrant use of plaintiffs' proposed rates:

> Moreover, Defendant's claim that B.S. and E.J.'s hearings were "uncomplicated" is absurd, given any reading of the comprehensive decisions by the two Hearing Officers in these cases demonstrates . . . . In B.S.'s case, it took nearly two years–which included a suspension from school and a two-week stay in a psychiatric hospital–and a hearing with sixty-five documentary exhibits, four witnesses, and written closing statements to obtain an order forcing DCPS to provide desperately needed treatment and educational assistance . . . . As for E.J., it

---

[4] Agapito v. District of Columbia, 525 F. Supp. 2d 150, 152 (D.D.C. 2007).

>took more than seven months and a hearing with fifty documentary exhibits, four witnesses, and written closing statement to obtain a ruling that would, hopefully, provide the help that E.J.'s [Multidisciplinary Team] made clear was needed.

Cox v. District of Columbia, No. 09-CIV-1720 (GK), Memorandum Opinion [#18] at 20-21.

This Court has no reason to conclude otherwise in this case.  Indeed, it would be irrational for me to reach a contrary conclusion in the absence of an argument by the defendant that Judge Kessler erred in her conclusion that, in light of the complexity of the case and the nature of the services provided, plaintiff's counsel rate of $400 per hour was reasonable.  In addition, there is no reason to conclude, on this particular record, that Jester's representation of her hourly rate is untrue and does not accurately reflect what her clients would pay her if they were able to do so.  Furthermore, it is important to recognize that more is needed in these cases than a simple Goldilocks approach–this rate is too high, this one is too low, this one is just right.  These cases all involve the same problem–balancing the burden on the public fisc and making sure that reimbursement rates are high enough to attract competent counsel.

Fee shifting statutes create "private attorney generals" who enforce statutory rights to accomplish a governmental goal.  This Court would certainly welcome a detailed review by the defendant, supported by statistical and economic analyses, that would lead to a principled approach to determining a rate that would serve all the admittedly valid competing interests.  The defendant does not offer such a review but instead states that "this Court has determined that the rate published in the DCPS Guidelines for the Payment of Attorney Fees in IDEA matters [i.e. $300] [is] reasonable and the appropriate rate of compensation for this type of litigation." [#15] at 8.  In support of this statement, defendant cites Agapito, 525 F. Supp. 2d at 152.

First, there is no such thing as "this Court" in the sense of a judicial body that issues a decision that binds the judges of that court until the court, *en banc*, reverses that decision. A District Court is comprised of individual judges who reach decisions that are not binding on any one else. That Judge Collyer concluded in <u>Agapito</u> that the services provided in that case did not justify the <u>Laffey</u> rates does not make her decision the opinion of "this Court." Thus, unless the defendant is ready to prove by statistical, economic or other evidence to include, perhaps, expert testimony, that $300 per hour strikes a fair balance between the burden on the public fisc and the need to attract competent counsel and that anything more is not a reflection of the actual market, these cases will become a meaningless exercise between plaintiffs, who will cite those cases that support use of the <u>Laffey</u> rate and the defendant, who will cite those that do not.

Until a more scientific approach is taken, I will not quarrel with the conclusion of Judge Kessler, based on the representation of counsel of her hourly rate, that she be reimbursed 1) at a rate of $400 per hour for work performed by Jester through December 31, 2009, and 2) at a rate of $125 per hour for all paralegal staff. [#14-1] at 8. I further find, however, that the upward adjustment from $400 to $450 for work performed in 2010 is not justified. The economic reality underlying the <u>Laffey</u> matrix is that legal services, like all other goods and services, increase in cost and that the consumer price index is a reliable indicator of how much the cost of services increases each year. In 2010, the <u>Laffey</u> rate increased from $465 to $475. I will use the same adjustment and use a rate of $410 for the services rendered in 2010.

    4.    <u>Plaintiffs' Counsel May Be Entitled to Reimbursement for the Services Defendant Claims Are Clerical</u>

In addition to objecting to the rate of reimbursement plaintiffs seek, defendant also

contends that reimbursement at the attorney's rate is not appropriate for clerical services. With regard to work performed on E.J.'s case, defendant argues that the following items should not be reimbursed:

|   |   | Hours | Amount |
|---|---|---|---|
| 2/24/10 | Review file to prepare for IEP meeting | .50 | $225.00 |
| 5/14/10 | Prepare petition for attorney's fees and costs (paralegal) | .30 | $ 37.50 |
|   | Review petition for attorney's fees | .30 | $135.00 |
|   | TOTAL |   | $397.50[5] |

Defendant's Praecipe Clarifying its Contentions that Plaintiffs are Not Due Reimbursement for Certain Work Performed [#19] at 2.

With regard to work performed on B.S.'s case, defendant identifies the following items as non-reimburseable:

|   |   | Hours | Amount |
|---|---|---|---|
| 3/26/10 | Prepare petition for attorney's fees and costs (paralegal) | .50 | $ 62.50 |
|   | Review petition for attorney's fees | .30 | $135.00 |
|   | Case close letter to B. Smith and K. Smith | .40 | $180.00 |
|   | TOTAL |   | $377.50 |

[#15-5] at 2.

This Court previously addressed this issue in Lopez v. District of Columbia, 383 F. Supp. 2d 18 (D.D.C. 2005), noting that "[t]his Circuit has addressed the question of whether clerical

---

[5] Originally, defendants erroneously claimed that the total amount of disputed clerical costs was $495. See [#15-4] at 2. The correct total amount claimed is $397.50. See [#19] at 2.

work is compensable and has concluded that Congress never intended for clerical billings to be included in attorneys' fees and that such services are 'generally considered within the overhead component of a lawyer's fee.'" Id. at 25 (quoting In re Olson, 884 F. 2d 1415, 1426-27 (D.C. Cir. 1989)). In Lopez, however, the issue was whether it was appropriate to reimburse plaintiff's counsel for time spent filing documents on the Court's electronic case filing system or "ECF," a task which is clearly clerical. Lopez, 383 F. Supp. 2d at 25.  Accord Baker v. District of Columbia Public Schools, ___ F. Supp. 2d ___, 2011 WL 4507251, at *4 (D.D.C. 2011) (holding that preparing, tabbing, updating, and filing documents were clerical tasks).

Reviewing a file in preparation for an IEP meeting may or may not be clerical.  If it involves a lawyer's substantive review of the issues in preparation for the hearing, it obviously is not.  If the review simply entails making sure that all the necessary files are organized and ready for the hearing, the task is clerical and the kind of thing that does not require a lawyer's skill or judgment.

Similarly, reviewing the fee petition may mean either reviewing the petition to make sure that entries are accurate (clerical) or it may mean determining whether to exercising any billing discretion (non-clerical).  Just about anyone could do the former but the latter requires a lawyer's judgment or skill.

With regard to the drafting of case close letters, communicating with one's client is an important part of a lawyer's responsibility, fulfilling the ethical responsibility a lawyer has to keep her client informed.  See D.C. Rules of Professional Conduct 1.4.

According to Jester, "[w]ith the exception of the limited engagement of Mery Williams for the preparation of attorney fee petitions as set forth above, I have no support staff, secretary

10

or paralegal. . . . I am the only one who performs work on my cases on behalf of my clients." [#14-4] at 6-7.  While that is so, it does not follow that everything that Jester does is *ipso facto* to be compensated at her hourly rate for actions that could and should have been done by non-lawyers were she at a larger firm.  It is illogical to make the legitimacy of the rate charged to be a function of whether the lawyer is a solo practitioner or in a large firm with secretaries and paralegals, when the nature of the work is the same no matter who does it.

Unfortunately, it is impossible on this record to resolve whether the tasks were the kind of tasks that required a lawyer's skill or the kind that are ordinarily delegated to clerks.  I will therefore give Jester an opportunity to tell me, in a brief supplemental submission, due by March 30, 2012, what specifically Jester was doing in the disputed entries and whether the work required a lawyer's skill and judgment or whether those duties would have been delegated to clerks had she practiced in a firm that employed clerks or secretaries.

        5.       Plaintiffs' Counsel Should be Reimbursed for other Non-Professional Services

Second, defendant argues that plaintiffs should not be reimbursed in full for "routine costs and expenses that are part of counsel's overhead." [#15] at 12.  In this category, defendant places costs such as travel time and photocopying. Id.  For tasks performed on E.J.'s case, defendant argues that the following items should be reimbursed not at the rate shown below, but at a discounted rate:

|  |  | Quantity | Amount |
|---|---|---|---|
| 5/14/10 | Copies (0.25 per page) | 137[6] | $ 34.25 |

---

[6] In both plaintiffs' motion and defendant's praecipe, the total number of copies is first identified as "37 pages @ 0.25 per page" and then as "137." See [#14-11] at 2; [#19] at 2.

|  |  | Quantity | Amount |
|---|---|---|---|
|  | Postage | 1 | $ 1.03 |
|  | Mileage (0.558 per mile) | 42 | $ 23.44 |
| 9/09-12/09 | Fax (0.25 per page) | 3 | $ .75 |
|  | Photocopies (0.25 per page) | 457 | $114.25 |
|  | Postage | 1 | $ 3.25 |
|  | Mileage (0.558 per mile) | 122 | $ 71.37 |
|  | TOTAL |  | $248.34 |

[#19] at 2-3.

For tasks performed on B.S.'s case, defendant argues that the following items for the period from September 3, 2009 through March 26, 2010 should be reimbursed at a lesser rate than that claimed by plaintiffs below:

|  | Quantity | Amount |
|---|---|---|
| Postage | 1 | $ 2.27 |
| Photocopies (0.25 per page) | 71[7] | $ 17.75 |
| Mileage (0.558 per mile) | 76 | $ 42.41 |
| TOTAL |  | $ 62.43 |

With regard to reimbursement for faxing and photocopying costs incurred by plaintiffs' counsel, judges of this Court have concluded that the defendant must pay them. See McClam v. District of Columbia, ___ F. Supp. 2d. ___, 2011 WL 3891809, at *5 (D.D.C. 2011) ("Costs for

---

Based on the total amount claimed, it appears as though the proper number of copies was 137.

[7] In both plaintiffs' motion and defendant's praecipe, the total number of copies is first identified as "67 pages @ 0.25 per page" and then as "71." See [#14-17] at 6; [#19] at 4. Based on the total amount claimed, it appears as though the proper number of copies was 71.

copying, faxing, and postage are customarily included in fee awards in IDEA litigation"); Holbrook v. District of Columbia, 305 F. Supp. 2d 41, 46 (D.D.C. 2004) ("The costs Plaintiffs claimed, *e.g.*, copying, faxing, and postage, are traditionally considered part of a reasonable attorney's fee."). There is no justification, however, for the rate sought. Just last September, Judge Collyer concluded that $0.15 per page rate for photocopies, the same rate defendant allowed in another IDEA case, was reasonable. As there is no indication that Jester paid $0.25 per page to a vendor for copying, the $0.15 rate will suffice for both faxes and photocopies.

With regard to reimbursement of mileage charges, judges of this Court have concluded they may be reimbursed if routinely billed by the attorney. McClam, 2011 WL 3891809, at *5 (citing New York v. Microsoft Corp., 297 F. Supp. 2d 15, 47-48 (D.D.C. 2003)). Time spent traveling is time that is not spent doing billable work and, in my experience, lawyers traditionally charge their clients for travel when they are doing so for their client's business.[8] Moreover, everyone, including lawyers, has to buy Metro tickets or pay for gas and parking when they travel. Jester does not seek her hourly rate but the mileage permitted by the federal government when, for example, a federal employee, uses his own car to drive to a destination for work. See Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment [#16] at 9. Furthermore, according to Jester, she was reimbursed by Judge Kessler for her mileage charges. Id. at 8. This Court will do the same.

      6.    <u>Whether Plaintiffs Should be Awarded Prejudgment Interest Requires Further Briefing</u>

---

[8] Legend has it that a hard charging associate at a Washington, D.C. firm flew cross country west to east and became the only lawyer in history who ever billed 28 hours in a single day.

If the law of the District of Columbia applies to the issue of the award of pre-judgment interest on attorney's fees under the IDEA, whether pre-judgment interest should be awarded is controlled by the application of D.C. Code § 15-109, rather than D.C. Code § 15-108. The latter statute applies only when the debt is liquidated. Here, the parties differed on the appropriate rate and whether certain charges are appropriate. Thus, the amount at issue is unliquidated, or not easily ascertainable, and thereby falls under § 15-109. Aon Risk Servs., Inc. v. Estate of Coyne, 915 A.2d 370, 379 (D.C. 2007) (citing Athridge v. Iglesias, 382 F. Supp. 2d 42, 49 (D.D.C. 2005)). See also Fudali v. Pivotal Corp., No. 03-CIV-1460, 2009 WL 1617096, at *5-6 (D.D.C. June 9, 2009). Section 15-109 provides:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff.

D.C. Code § 15-109.

To date, the District of Columbia Court of Appeals has allowed pre-judgment interest, under D.C. Code § 15-109, in both contract and conversion actions, but it is unclear whether it will be permitted in a negligence action. See Athridge, 382 F. Supp. 2d at 53. There is no specific statutory authority that would permit the award of pre-judgment interest against the District of Columbia on an amount due pursuant to a fee-shifting statute, where the money comes from a public treasury.

By the same token, two 2011 opinions of the D.C. Court of Appeals[9] indicate that, under the common law, courts may award pre-judgment interest. However, there is no indication yet whether this power may be exercised against a sovereign to reach funds not appropriated for that purpose. See G. v. Fort Bragg Indep. Sch., 324 F.3d 240, 256 (4th Cir. 2003). Awarding pre-judgment interest may significantly increase the burden on the District of Columbia without a concomitant increase in the appropriation to pay the final judgments in these IDEA cases.[10]

Ultimately, I find that the briefing by both parties is inadequate. Accordingly, if plaintiffs wants to press their claim for pre-judgment interest, then they must submit a supplemental brief that addresses the following issues:

1. Does District of Columbia law, whether D.C. Code § 15-109 or the common law power to award pre-judgment interest, apply to IDEA cases where the court's jurisdiction is based on cases involving federal questions?

2. Assuming District of Columbia law applies, does it apply with equal force to the District of Columbia as defendant or does the concept of sovereign immunity apply to bar an award of pre-judgment interest against it?

---

[9] Wash. Inv. Partners v. Sec. House, 28 A.3d 566, 581 (D.C. 2011); Burke v. Groover, Chrisie & Merritt, 26 A.3d 292, 306 (D.C. 2011).

[10] Judge Kessler awarded pre-judgment interest to Jester in Holbrook v. District of Columbia, 305 F. Supp. 2d 41 (D.D.C. 2004), as have District Court judges in the Seventh Circuit. E.g. C.W. v. Bd. of Educ., No. 11-CIV-2349, 2012 WL 355360 (N.D. Ill. Feb. 1, 2012); Brenton H. v. Bd. of Educ., No. 10-CIV-1360, 2011 WL 4501408 (N.D. Ill., Sept. 28, 2011); J.F. v. Bd. of Educ., No. 10-CIV-614, 2011 WL 3839660; Bd. of Educ. v. Walker, 800 F. Supp. 2d 917 (N.D. Ill. July 25, 2011); Judah M. v. Bd. of Educ., 798 F. Supp. 2d 942 (N.D. Ill. 2011). In none of these cases, however, did the courts consider the sovereign immunity question. See also Kaseman v. District of Columbia, 329 F. Supp. 2d 20, 28 (D.D.C. 2004) (allowed pre-judgment interest when District stonewalled request for payment of fees and presented reasons for rejecting requests that "bordered on the absurd.").

3. If District of Columbia law does not apply, is there any provision in the IDEA that justifies the award of pre-judgment interest against the District?

4. Whatever the source of authority, how should the court determine the date on which pre-judgement interest begins to accrue?

I appreciate that, given the amounts at issue, plaintiffs may conclude that spending additional time and effort on securing pre-judgment interest is not worth it. In fairness, I must indicate that I will not award attorney's fees for the work done answering my questions if plaintiffs fail to convince me of their entitlement to pre-judgment interest. Thus, plaintiffs will either have to file the supplemental submission I am requiring by March 30, 2012 or advise me in writing by March 23, 2012, that they will not be pursuing pre-judgment interest. In the meanwhile, I will enter judgment in the amount of $244.70 with the understanding that I may enter a supplemental judgment if necessary. If plaintiffs file a supplemental submission, defendant must file their response by April 13, 2012, and plaintiff shall have until April 20, 2012 to reply thereto.

In the meanwhile I will direct the Clerk to enter judgment for plaintiffs, calculated as follows:

| Client / Invoice # | Category | Dates work performed | Hours | Rate Sought | Amount Sought | Rate Awarded by Court | Amount Awarded by Court |
|---|---|---|---|---|---|---|---|
| E.J. / #11108 | Jester's Attorney's Fees | 7/20/2009-12/24/2009 | 20.6 | $400/hr | $8,240 | $400/hr | $8,240.00 |

| Client / Invoice # | Category | Dates work performed | Hours | Rate Sought | Amount Sought | Rate Awarded by Court | Amount Awarded by Court |
|---|---|---|---|---|---|---|---|
| | Preparation of Fee Petition | 12/29/2009 | 0.5 | $125/hr | $62.50[11] | TBD[12] | TBD |
| | Review of Fee Petition | 12/29/2009 | 0.4 | $400/hr | $160.00 | TBD | TBD |
| | Faxes (3) | n/a | n/a | $0.25/pg | 0.75 | $0.15/pg | 0.45 |
| | Copies (457) | n/a | n/a | $0.25/pg | 114.25 | $0.15/pg | $68.55 |
| | Mileage (122) | 9/1/2009 11/16/2009 12/1/2009 | n/a | $0.585/mile[13] | $71.37 | $0.55/mile | $67.10 |
| E.J. / #10008 | Jester's Attorney's Fees | 1/5/2010 - 3/30/2010 | 11 | $450/hr | $4,950.00 | $410/hr | $4,510.00 |
| | Preparation for IEP Meeting | 2/24/2010 | 0.5 | $450/hr | $225.00 | TBD | TBD |

---

[11] Although defendant objected to the rate billed by plaintiffs' counsel for some of the work performed by her paralegal, defendant neglected to make that argument as to Invoice #11108. Nevertheless, the Court will reserve its ruling as to this category until after plaintiffs' counsel has filed her statement clarifying the nature of the work performed.

[12] To be determined.

[13] In plaintiffs' counsel's declaration, she states that she uses the federal government rate for seeking reimbursement for mileage. [#14-4] at 6. In the declaration, she identifies that rate as 0.585 per mile. Id. That rate, however, fluctuates. According to the archived privately owned automobile rates maintained by the U.S. General Services Administration ("GSA"), the approved rate from January 1, 2009 through December 31, 2009 was 0.55 per mile. GSA, http://www.gsa.gov/portal/content/103969 (last visited Mar. 16, 2012). In 2010, the rate went down to 0.50 per mile. Id. The Court will use the GSA rates as published.

| Client / Invoice # | Category | Dates work performed | Hours | Rate Sought | Amount Sought | Rate Awarded by Court | Amount Awarded by Court |
|---|---|---|---|---|---|---|---|
| | Preparation of Fee Petition | 5/14/2010 | 0.3 | $125/hr | $37.50 | TBD | TBD |
| | Review of Fee Petition | 5/14/2010 | 0.3 | $450/hr | $135.00 | TBD | TBD |
| | Copies (137) | n/a | n/a | $0.25/pg | $34.25 | $0.15/pg | $20.55 |
| | Mileage (42) | 2/23/2010 | n/a | $0.558/mile | $23.44 | $0.5/mile | $21.00 |
| B.S. / #11148 | Jester's Attorney's Fees | 9/3/2009 - 12/15/2009 | 6.4 | $400/hr | $2,560 | $400/hr | $2,560 |
| | (same) | 1/5/2010 - 3/26/2010 | 9.8 | $450/hr | $4,410 | $410/hr | $4,018.00 |
| | Preparation of Fee Petition | 3/26/2010 | 0.5 | $125/hr | $62.50 | TBD | TBD |
| | Review of Fee Petition | 3/26/2010 | 0.3 | $450/hr | $135.00 | TBD | TBD |
| | Case Close Letter | 3/26/2010 | 0.4 | $450/hr | $180.00 | TBD | TBD |
| | Copies (71) | n/a | n/a | 0.25/pg | $17.75 | 0.15/pg | $10.65 |
| | Mileage (76) | 1/6/2010, 3/16/2010 | n/a | 0.558/mile | $42.41 | 0.5/mile | $38.00 |
| Total | | | | | | | $19,554.30 |

The following summary is based on the above calculations:

| Total Amount Awarded by Court | | | | | $19,554.30 |
|---|---|---|---|---|---|
| Less Total Amount Already Paid by DCPS | | | | | $19,309.60 |
| Date | Check No. | Invoice No. | Client | Amount | |
| 4/19/2010 | 150 005040736 | 11108 | E.J. | $6,251.80 | |
| 5/12/2010 | 150 005053426 | 11148 | B.S. | $4,932.32 | |
| 8/10/2010 | 150 005100010 | 10008 | E.J. | $3,306.58 | |
| 2/4/2011 | 150 005205887 | 11108 | E.J. | $2,060.00 | |
| (same) | 150 005205887 | 10008 | E.J. | $1,106.58 | |
| (same) | 150 005205887 | 11148 | B.S. | $1,652.32 | |
| Total | | | | $19,309.60 | |
| Total Amount Due Plaintiffs | | | | | $244.70 |

An Order, which directs the Clerk to enter judgment in the amount of $244.70, accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE